[Crim. No. 13065. Fourth Dist., Div. One, Aug. 2, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JOHN DEENEY, Defendant and Appellant.

650

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Paul Bell, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steven H. Zeigen and Robert B. Shaw, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LEWIS, J.*—A jury convicted Edward John Deeney of involuntary manslaughter (Pen. Code, § 192, subd. 2) in the death of June Deeney. He appeals claiming the court improperly admitted hearsay declarations and

---

*Assigned by the Chairperson of the Judicial Council.

evidence that Deeney previously abused June. In addition, he asserts the court erred in its instructions to the jury on circumstantial evidence.

The Deeneys had a turbulent relationship which frequently erupted into heated arguments. Both Deeney and his wife June were often intoxicated on these occasions. On the evening before June died neighbors called the police, reporting a loud argument at the Deeney's residence. When the police arrived June appeared to be uninjured. However, the next morning June was hospitalized and died shortly thereafter from a brain hemorrhage.

Deeney maintained at trial that June's death occurred accidentally. A pathologist testified June's hemorrhage probably resulted from a fall, rather than a blow. This expert also concluded that because June was a chronic alcoholic she probably stumbled often and bruised easily. This testimony was buttressed by witnesses who had seen June stumble in the past.

During the trial the court allowed prosecution witnesses to testify Deeney on more than one occasion dragged June, partially clothed, by her feet onto the grass in front of their duplex. They further testified Deeney then took a hose and sprayed June with water while yelling obscenities at her. This testimony related to events occurring on May 10, and similar events on May 3. June died on May 18, following a disturbance on May 17.

Witnesses reported bruises on June's body in the weeks before her death. No witness ever saw Deeney hit or beat his wife. However, at trial the court allowed witness Lee to testify June had said, "Ed hit me with a rolled up newspaper" and "Ed hit me, beat me." These declarations referred to the prior incident occurring on either May 10 or May 3. These hearsay statements were repeated a number of times in the course of the trial and Santibanez, the investigating officer, was permitted to testify Lee told him that June had made those statements to her.

 Both the hearsay evidence and the evidence of Deeney's prior conduct were erroneously admitted and both errors were prejudicial.

Hearsay evidence is evidence of a statement that was made other than by a witness while testifying at the hearing, and that is offered to prove the truth of the matter stated (Evid. Code, § 1200).[1] The statements in question were made out of court by the deceased victim and by the witness. They were offered to prove Deeney hit his wife on a prior occasion. Therefore, they were hearsay.

---

[1]All statutory references are to the Evidence Code unless otherwise specified.

 The court nevertheless admitted these statements under the "state of mind" exception to the hearsay rule (§§ 1250-1252). The first requirement of section 1250 is the statement must describe the declarant's state of mind, emotion, or physical sensation. The People argue the declaration, "Ed hit me with a rolled up newspaper" is a statement of physical condition because it points to the cause of June's bruises. However, a statement of how a mental or physical condition was caused is not a declaration of either a then existing or previously existing state of mind or physical condition. It is a statement of the declarant's memory of an event. These statements were substantially distinguishable from the statements of present fear, a state of mind, in *People v. Arcega* (1982) 32 Cal.3d 504 [186 Cal.Rptr. 94, 651 P.2d 338], relied on by the People.

In *People v. Hamilton* (1961) 55 Cal.2d 881 [13 Cal.Rptr. 649, 362 P.2d 473] (rev. on other grounds, *People v. Wilson* (1969) 1 Cal.3d 433, 442 [82 Cal.Rptr. 494, P.2d 22], the court ruled statements asserting the defendant threatened the deceased, beat her, and forced his attentions on her were all inadmissible. The court stated: "[D]eclarations directly asserting the existence of a mental condition on the part of the decedent-declarant, *and not including a description of the past conduct of a third person that may have caused that mental condition,* are and should be admissible . . . ." (*People v. Hamilton, supra,* 55 Cal.2d 881, 895, italics added.)

Similarly, in *Estate of Truckenmiller* (1979) 97 Cal.App.3d 326 [158 Cal.Rptr. 699], the court excluded statements pointing to the cause of the decedent's state of mind. The issue was whether beneficiaries of an *inter vivos* gift of property exerted undue influence on the donor. The trial court admitted the donor's statement that the beneficiaries had tricked him into making the gift. On appeal, the court held the statement indicating he was tricked was admissible because it bore on the donor's past state of mind. However, the court ruled the portion of the statement relating to *who* had tricked him was inadmissible hearsay (*id.* at pp. 333-334).

If the evidence in issue here were only that June said she had been bruised, it may have qualified as a statement of physical condition. However, the statement like those in *Hamilton* and *Truckenmiller,* principally related to the *cause* of June's condition and therefore fails the first requirement of section 1250.[2]

---

[2]It should be noted, however, that a statement pointing to the cause of a physical condition may be admissible if it is made by a patient to a physician. The statement must be necessary to proper diagnosis and treatment and is admissible only to show the basis of a medical opinion (*Johnson v. Aetna Life Insurance Co.* (1963) 221 Cal.App.2d 247, 252 [34 Cal.Rptr. 484]). This exception is obviously inapplicable to the present case.

Section 1250 allows the hearsay statement to be received to prove either the declarant's state of mind, emotion, or physical sensation only when that state of mind or condition is in issue in the action (§ 1250, subd. (a)(1)) or to prove or explain acts or conduct of the declarant (§ 1250, subd. (a)(2)). Even if the statement "Ed hit me . . ." were a declaration of a physical condition, such statement still fails to meet the requirements of sections 1250, subdivision (a)(1) and 1250, subdivision (a)(2). June's physical condition on the prior occasion was not at issue in this action for purposes of section 1250, subdivision (a)(1). Neither Deeney nor the People questioned whether June was bruised before her death. The hearsay statements were not offered to prove June's physical condition on the prior occasion but rather the cause of that condition.

Furthermore, these statements were not offered to explain June's acts or conduct. Instead, they were used to attempt to demonstrate Deeney's conduct. The People did not raise any issue concerning June's conduct before her death. (See *People* v. *Ireland* (1969) 70 Cal.2d 522, 530 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323].) Therefore, section 1250, subdivision (a)(2) is also not a proper avenue for admissibility of the hearsay statements.

Under section 1250, subdivision (b) statements of memory or belief may not be admitted to prove a fact remembered or believed. This is because the admission of such declarations would result in the virtual elimination of the hearsay rule (*People* v. *Hamilton, supra,* 55 Cal.2d 881, 895-896). "Ed hit me with a rolled up newspaper" is precisely the type of statement section 1250, subdivision (b) proscribes. It is a statement of June's memory of an event, offered to prove the event occurred. All of the traditional hearsay dangers are inherent in this statement. June's memory, perception, narration and sincerity are all in question.

In addition, the statement is highly prejudicial. In *Shepard* v. *United States* (1933) 290 U.S. 96 [78 L.Ed. 196, 54 S.Ct. 22], the Supreme Court dealt with a similar hearsay statement. The deceased victim had said, "Dr. Shepard has poisoned me." This statement was offered to prove the victim's will to live, where suicide was raised as an issue. However, the court ruled the statement inadmissible: "[The People] did not use the declarations by Mrs. Shepard to prove her present thoughts and feelings, or even her thoughts and feelings in times past. It used the declarations as proof of an act committed by someone else, . . . It will not do to say that the jury might accept the declarations for any light that they cast upon the existence of a vital urge, and reject them to the extent that they charged the death to someone else. Discrimination so subtle is a feat beyond the compass of ordinary minds. (*Id.* at p. 104 [78 L.Ed. at pp. 201-202].) Unlike *Shepard,*

here the jury heard a statement having no bearing on any physical or mental condition in issue. What remained was a pure hearsay declaration describing the prior criminal conduct of the defendant. The court erred in admitting this statement. The double hearsay testimony by Santibanez as to Lee's prior declarations was also inadmissible and prejudicial. The defect is not cured by the People's asserting the testimony was "simply cumulative" because what it was cumulative of was other inadmissible hearsay.

Deeney also correctly contends the court improperly admitted evidence indicating he previously abused June. This evidence involved testimony that Deeney dragged his partially clothed wife through a grassy area and sprayed water on her a week or two prior to her death. Evidence of a person's character or a trait of character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is inadmissible when offered to prove conduct on a specific occasion (§ 1101, subd. (a)). However, evidence that a person committed a crime or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than a disposition to commit such acts is admissible (§ 1101, subd. (b)).

In determining the admissibility of evidence of prior misconduct the first inquiry is what was this evidence offered to prove. If it was offered to show Deeney's propensity to abuse his wife, it would be inadmissible. (See *People* v. *Kelley* (1967) 66 Cal.2d 232, 238 [57 Cal.Rptr. 363, 424 P.2d 947].) The People incorrectly contend this evidence was relevant to facts such as identity, motive, knowledge, intent, or absence of mistake or accident.

Deeney's prior conduct did not tend to identify him as June's killer. There was no close connection between Deeney's prior acts and June's death to logically infer if Deeney committed one, he must be the one who committed the other. (See *People* v. *Haston* (1968) 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91].) June died from a brain hemorrhage resulting from a fall or a blow. These were the only specific facts known about her death. Comparing these facts to events in which Deeney dragged June over a grassy area fails to reveal any common features tending to identify Deeney as June's murderer.

In addition, Deeney's prior bad acts do not show him to be in possession of any knowledge material to June's death. Neither do these acts reveal any motive to kill June. These prior events do show Deeney mistreated June and frequently argued with her. They may even suggest Deeney disliked his wife. However, because these events did not involve any physical attacks even remotely capable of causing death, they do not demonstrate Deeney disliked June so intensely that he wished her dead.

The use of prior instances of conduct to prove intent is permissible pursuant to section 1101, subdivision (b) where the prior conduct is helpful in showing the particular intent of the defendant on the occasion in question. For example, in a prosecution for arson and insurance fraud, evidence the defendant filed an insurance claim for losses resulting from a previous fire was admissible to prove the defendant's intent and motive to collect on insurance from the subsequent arson (*People* v. *Foster* (1981) 114 Cal.App.3d 421 [170 Cal.Rptr. 597]). Here, however, the evidence that Deeney dragged June and sprayed her with water did not point to an intent to kill her at the time alleged.

Finally, when there is no dispute the defendant committed the act, evidence of prior misconduct may be used to show absence of mistake or accident on the part of the *defendant* (*People* v. *Guerrero* (1976) 16 Cal.3d 719, 726 [129 Cal.Rptr. 166, 548 P.2d 366]). Here, however, it was far from clear whether any conduct of *Deeney* caused June's death and there was no issue regarding whether *his* conduct was accidental or mistaken.

In short, the evidence of prior misconduct was not admissible for any reason stated by the People or listed in section 1101, subdivision (b). ■ However, evidence of prior bad acts may properly be admitted to establish any fact material for the People or to overcome any material matter sought to be proved by the defense (*People* v. *Kelley, supra,* 66 Cal.2d 232, 239). Here, Deeney sought to prove June died accidentally. To prove this assertion he set forth the following facts and inferences:

(1) June had multiple bruises on her body in the weeks before her death; (2) witnesses saw June fall on occasion and these falls may have resulted in the bruises that were seen; (3) June was alcoholic, and alcoholics tend to stumble and bruise easily; and (4) because June had a tendency to fall accidentally, it is probable her death resulted from an accidental fall.

Because Deeney raised this defense, the People had a right to rebut it with evidence of prior conduct of Deeney by reasoning: (1) Deeney dragged June through the grass on a number of occasions; (2) these incidents may have resulted in the previous bruises; (3) because these bruises were caused by Deeney, the contention June's prior bruises arose by accident loses strength; and (4) therefore, the inference June died as a result of accidental injuries on this occasion becomes weaker.

Nowhere in this reasoning process does one infer because Deeney abused his wife in the past he was likely to abuse her in the future. Therefore, the evidence of prior misconduct could have been admitted to rebut the assertion of accidental death.

■ The inquiry, however, does not end here. The probative value of evidence of prior misconduct must outweigh its prejudicial effect (see § 352 and *People* v. *Thompson* (1980) 27 Cal.3d 303, 318 [165 Cal.Rptr. 289, 611 P.2d 883]), and is admissible only with appropriate limiting instructions. In addition, " '[t]he evidence should be received with "extreme caution" and if its connection with the crime charged is not clearly perceived the doubt should be resolved in favor of the accused . . . .' " (*People* v. *Guerrero, supra,* 16 Cal.3d 719, 724.) In determining the probative value of the uncharged offense, the court should consider: "(1) the *materiality* of the fact sought to be proved . . . ; (2) the *tendency* of the uncharged crime to . . . disprove the material fact; and (3) the existence of any *rule* or *policy* requiring the exclusion of relevant evidence." (*People* v. *Thompson, supra,* 27 Cal.3d 303, 315.) ■ The standard of review for evidence admitted under section 352 is abuse of discretion (*People* v. *Jackson* (1980) 110 Cal.App.3d 560, 565-566 [167 Cal.Rptr. 915]).

■ Even though evidence of prior misconduct may have been relevant to the claim of accidental death, had this particular rationale been suggested, the court abused its discretion by admitting it. The probative value of this evidence was slight. The possibility of accidental death was a material issue at trial. However, evidence of prior misconduct did not strongly tend to rebut this possibility. The suggestion June had been intentionally injured on one or more occasions is not substantially inconsistent with the contention she was accident prone. Both of these assertions could be true.

Nevertheless, the evidence of prior misconduct did have some probative value. The jury, however, was not instructed on how the evidence could properly be received. Rather, the jury was instructed at the time this evidence was received "the evidence in question is being offered solely to demonstrate an alleged motive, a criminal intent, a lengthy preparation or a required knowledge insofar as said motive, intent, preparation or knowledge bears upon the defendant's state of mind as it existed on or about May 17, 1980." With this instruction, the proper probative value of the evidence diminished entirely and the prejudicial effect was enhanced.

The prejudicial effect of this evidence was considerable. Deeney was portrayed as a man who regularly abused his wife. The chance the jury might use his prior misconduct to infer he had a propensity to abuse June was significant.

In *People* v. *Sam* (1969) 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700], the court was faced with a similar factual situation. The defendant was convicted of involuntary manslaughter. The People introduced evidence of two prior acts in which the defendant had kicked a woman in the ribs and

fought with another person. On appeal, the court held the admission of the evidence was improper. "In short, defendant was made to appear to be an antisocial individual of generally bad character, . . . Certainly a substantial showing of probative value was required to justify admission of this prejudicial and inflammatory evidence . . . ." (*Id.* at p. 206.) Here, as in *Sam,* the evidence of prior misconduct lacked sufficient probative value to overcome its inherently prejudicial nature.

■■ ■■ The admission of the hearsay statements along with the evidence of Deeney's prior misconduct constituted reversible error. A result more favorable to the defendant would have been reached in the absence of these errors (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]). Because these errors require reversal, we do not reach the remaining issue regarding the court's instructions on circumstantial evidence.

The judgment is reversed.

Cologne, Acting P. J., and Wiener, J., concurred.