[Crim. No. 44844. Second Dist., Div. Six. Sept. 5, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL STANLEY NOTTINGHAM, Defendant and Appellant.

488

COUNSEL

David Harrell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Christine C. Franklin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

OCHOA, J.*—Appellant Michael Stanley Nottingham was convicted at jury trial of murder in the first degree under the felony-murder rule. (Pen. Code, § 190.2, subd. (a)(17).) The jury found to be true the allegation that appellant committed the murder while engaged in the attempted commission of the crime of rape. (Pen. Code, § 261.) The appellant was sentenced to life in prison without the possibility of parole. Because the jury was not instructed that it had to find that the appellant had the specific intent to kill in accordance with *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], and because the court improperly admitted evidence of prior bad acts of the appellant and erred in instruction as to how such evidence can be considered, the conviction must be reversed.

---

*Assigned by the Chairperson of the Judicial Council.

## FACTS

Appellant and the victim, Margie D., had become acquainted prior to her homicide, which occurred on August 4, 1982. Appellant had referred to Ms. D. by use of both the names she commonly used, "Margie" and "Kelly." Ms. D. arrived at JJ's Bar in Thousand Oaks at around 11 p.m., on Tuesday, August 3, 1982, and met appellant who was already at the bar. Appellant and Ms. D. played pool, drank together and left the bar around closing time at 2 a.m. While in the bar, appellant was overheard saying, "I'm going to get that one tonight," while looking in the direction of Ms. D.

Nottingham and Ms. D. went to Nottingham's house in Ms. D.'s automobile. Nottingham introduced Ms. D. to his sister and then the two of them talked outside until his sister came out and told them to be quiet. The automobile was then heard departing from the residence without any person having reentered the residence.

Ms. D.'s body was located some two days later in a remote rural area buried under brush and debris. Her car was nearby. Ms. D. had been savagely beaten, stripped of her clothing and strangled with a portion of her blouse. Medical evidence was inconclusive as to whether or not Ms. D. had been raped.

A witness had driven past this location at around 6:30 a.m. on a morning during the week of the homicide, and had seen a man whom she identified as being very similar to Nottingham walking quickly down the road. The prosecution presented further evidence which was circumstantial in nature and which tended to tie Nottingham to the location where the body was found. Nottingham had been observed by a neighbor sleeping next to his girlfriend's house at around 7:30 a.m., on August 4. He later departed from the area, but returned to his girlfriend's house at around 9:30 a.m. His girlfriend described him as having the odor of alcohol about him and testified that he had a hangover.

When later questioned about these events by Sheriff's Sergeant Larry Robertson, Nottingham indicated that he had only seen Ms. D. a few times and that he knew her as "Teresa." He confirmed their having been together that evening but stated that Ms. D. had driven away from his home by herself. He stated that he had reentered his house to retrieve a jacket and had walked to his girlfriend's home, where he had slept outside until morning. Nottingham did not testify at trial.

The prosecution's first three witnesses were allowed to testify, over the objection of defense counsel, concerning two prior incidents where Not-

tingham had sexually assaulted juvenile females. Their testimony related to a 1974 incident and a 1977 incident. In 1974, Nottingham assaulted Debra O. inside her home. Nottingham was 16 and Debra was 12 at the time. Debra knew defendant by sight but had never spoken to him. She was in the process of allowing him to take a shortcut through her house to his own home when she was attacked. He grabbed her from behind and choked her, cutting off her ability to breathe, until she said his name. He stopped choking her and began to take off his clothes. Nottingham attempted to rape her, then apologized and departed.

In 1977, Nottingham took 14-year-old Katherine S. on a motorcycle ride after a family outing which both had attended. Katherine had been Nottingham's brother's girlfriend, but he had recently broken off the relationship. Nottingham and Katherine had known each other less than a year and had lived in the same apartment complex. They rode to a canyon area outside town where young people would congregate to ride motorcycles and swim in a pond. Nottingham and Katherine kissed once, but she resisted his amorous advances. She began to walk away, and he called her back using the pretext that his motorcycle had fallen down. He then grabbed her around the neck which startled her but did not hurt her. He pushed her down, forced her to orally copulate him, then forcibly removed her clothing and raped her. He thereafter apologized and she departed from the area, refusing an offered ride home from defendant.

## A. *Instructional Error: Intent to Kill*

■ Subsequent to these trial proceedings, the California Supreme Court held in the case of *Carlos* v. *Superior Court, supra,* 35 Cal.3d 131, that proof of an intent to kill or to aid in a killing is essential to sustain a conviction of a felony murder special circumstances allegation under the provisions of the 1978 death penalty initiative. The *Carlos* holding has been determined to apply retroactively to all cases not yet final. (*People* v. *Garcia* (1984) 36 Cal.3d 539, 549 [205 Cal.Rptr. 265, 684 P.2d 826].) In *Garcia,* it was determined that *Carlos* error was prejudicial per se, requiring reversal in all instances, save and except for certain narrow exceptions. The only instances in which a failure to give a proper intent instruction under *Carlos* may not require reversal of a special circumstance finding are: (1) if the erroneous instruction was given in connection with an offense for which the defendant was acquitted and if the instruction had no bearing on the offense for which he was convicted, (2) if the defendant conceded the issue of intent, (3) if the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given, instructions, or (4) if the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of considera-

tion. (*People* v. *Ramos* (1984) 37 Cal.3d 136, at p. 147 [207 Cal.Rptr. 800, 689 P.2d 430].)

■ In discussing this last exception, the Supreme Court has indicated that its application to pre-*Carlos* cases will be difficult. A defendant who is unaware of the intent to kill element of the felony-murder special circumstance might through ignorance fail to present evidence worthy of consideration on the intent issue. This exception is limited to cases where it is clear that "the parties recognized that intent to kill was in issue, presented all evidence at their command on that issue, and in which the record not only establishes the necessary intent as a matter of law but shows the contrary evidence not worthy of consideration. [Fn. omitted.]" (*People* v. *Ramos, supra,* 37 Cal.3d at p. 147.) The exception is only applied in cases which clearly fall within the ambit of the reasoning of the exception. (*People* v. *Garcia, supra,* 36 Cal.3d at p. 556; *People* v. *Ramos, supra,* 37 Cal.3d at p. 147.)

The Attorney General concedes that instructional error occurred in this case but contends that reversal is not required because the evidence in the record establishes appellant's intent to kill Ms. D. He argues that the parties were on notice that intent to kill was at issue due to a pretrial ruling regarding the admissibility of prior offenses, and that the method of killing establishes appellant's intent to kill.

The Supreme Court has stated that in regard to this fourth exception, the so-called *Cantrell-Thornton* exception, both prongs of the exception must be established in the record. The record must show that the parties recognized that intent to kill was in issue and presented all the evidence available in that regard. The record must also establish intent to kill as a matter of law. (*People* v. *Anderson* (1985) 38 Cal.3d 58, 61-62 [210 Cal.Rptr. 777, 694 P.2d 1149]; *People* v. *Hayes* (1985) 38 Cal.3d 780, 787 [214 Cal.Rptr. 652, 699 P.2d 1259].)

The evidence regarding prior sex offenses cannot be construed as having placed the parties on notice that intent to kill was at issue in this case. Neither of the prior acts involved a killing and neither fact situation came close to approaching the brutality of Ms. D.'s demise. In addition, as will be discussed *infra,* the admission of the evidence of prior bad acts was prejudicial error. Finally, the prosecution made no effort to prove an intent to kill and its sole theory in argument was that the killing occurred in the course of an attempted rape.

■ The issue as to whether or not the method of killing itself establishes an intent to kill presents a more difficult question. Ms. D. was viciously

beaten about the head and strangled with a portion of her own blouse. The method of killing obviously points to an intended killing as opposed to an accidental death or a death which is a by-product of actions impelled by some intent other than an intent to kill. The victim's strangulation demonstrates a deliberate intent to kill on the perpetrator's part. (*People* v. *Rowland* (1982) 134 Cal.App.3d 1, 9 [184 Cal.Rptr. 346]; *People* v. *Frank* (1985) 38 Cal.3d 711, 733 [214 Cal.Rptr. 801, 700 P.2d 415].)

On the other hand, the defendant raised a defense of diminished capacity in regard to the formulation of a specific intent to rape during the trial proceedings. The prosecutor's theory of the case was that appellant began to formulate a specific intent to rape early in the evening at the bar. Yet, the trial proceedings reveal no argument concerning the formulation or existence of a specific intent to kill or when such an intent might have been formulated. The Supreme Court has determined that even where the method of killing strongly suggests that the killing was intentional, where a defense of diminished capacity is tendered, it is difficult to say that any contrary showing in regard to the existence of an intent to kill is unworthy of consideration as a matter of law. (*People* v. *Boyd* (1985) 38 Cal.3d 762, 771 [215 Cal.Rptr. 1, 700 P.2d 782].)

The evidence in the record indicates that the appellant had been drinking substantial amounts of alcohol on the evening in question. The trial court, in fact, instructed the jury on the impact of voluntary intoxication on the defendant's ability to formulate a specific intent to rape. Yet, in regard to first degree felony murder, the jury was instructed that "[t]he unlawful killing of a human being, *whether intentional, unintentional or accidental,* which occurs as a result of the commission of or attempt to commit the crime of rape, and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree." (CALJIC No. 8.21 (4th ed. 1979), italics added.)

Although the method of killing in this case points strongly to the existence of a specific intent to kill, we cannot speculate as to what defense might have been presented if specific intent to kill on the part of the perpetrator at the time of the killing had been in issue before the jury. Any defense of diminished capacity in regard to a specific intent to kill was neither developed nor argued. There may have been no evidence to support such a mitigation defense in regard to an intent to kill issue, but we cannot assume on this record that none exists. (*People* v. *Turner* (1984) 37 Cal.3d 302, 328 [208 Cal.Rptr. 196, 690 P.2d 669].)

█ In establishing strict standards for determining whether the record not only establishes the necessary intent as a matter of law but reveals any

contrary evidence to be unworthy of consideration, the California Supreme Court was cognizant of the fact that a four-judge majority on the United States Supreme Court has determined that instructions which affirmatively remove the issue of intent from the jury are prejudicial per se. "If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant. [Fn. omitted.] To allow a reviewing court to perform the jury's function of evaluating the evidence of intent, when the jury never may have performed that function, would give too much weight to society's interest in punishing the guilty and too little weight to the method by which decisions of guilt are to be made." (*Connecticut* v. *Johnson* (1983) 460 U.S. 73, 85-86 [74 L.Ed.2d 823, 833-834, 103 S.Ct. 969].)

### B. *Admission of Evidence of Prior Acts*

■ Evidence Code section 1101, subdivision (a), makes evidence of a person's character or a trait of his character inadmissible when offered to prove his conduct on a specified occasion. "The general rule is that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect. [Citations.] The purpose of the rule is to avoid placing the accused in a position of having to defend against crimes for which he has not been charged and to guard against the probability that evidence of other criminal acts having little bearing on the question whether defendant actually committed the crime charged would assume undue proportions and unnecessarily prejudice defendant in the minds of the jury, as well as promote judicial efficiency by restricting proof of extraneous crimes. [Citations.]" (*People* v. *Kelley* (1967) 66 Cal.2d 232, 238-239 [57 Cal.Rptr. 363, 424 P.2d 947]; *People* v. *Haston* (1968) 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91].)

This rule has existed in our common law for nearly three centuries. The inherent danger in regard to the use of other-crimes evidence to prove a fact in the charged offense is that "[i]nevitably, it tempts 'the tribunal . . . to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.'" (*People* v. *Alcala* (1984) 36 Cal.3d 604, 631 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People* v. *Guerrero* (1976) 16 Cal.3d 719, 724 [129 Cal.Rptr. 166, 548 P.2d 366].)

■ On the other hand, Evidence Code section 1101, subdivision (b), makes admissible evidence of acts other than the crime charged when such

other act is relevant to prove some fact expressly in issue in the charged offense. Examples of the type of facts which may be proven by evidence of other acts are listed in the statutory provision and include motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The high degree of inherent prejudice of other-crimes evidence requires that its relevancy be "examined with care." It is to be received with "extreme caution," and all doubts about its connection to the crime charged must be resolved in the accused's favor. ■ Moreover, because of its inflammatory impact, evidence of other offenses must be excluded (1) if it is not relevant to an issue *expressly* in dispute, (2) if it is merely cumulative with respect to other available evidence, or (3) if it is more prejudicial than probative under all the circumstances. (*People* v. *Alcala, supra,* 36 Cal.3d at pp. 631-632.) "'. . . [W]hen evidence is offered that a defendant committed an offense other than that for which he is on trial, its *relevancy* to prove some *disputed* fact on a theory in addition to its relevancy as character-trait or propensity evidence—such as intent, motive, or modus operandi—*must* be *substantial* on the theory tendered in order for the probative value of such evidence to be considered as outweighing the manifest danger of undue prejudice, to avoid exclusion under Evid. Code section 352, even though not barred by Evid. Code section 1101(b).'" (*People* v. *Tassell* (1984) 36 Cal.3d 77, 88 [201 Cal.Rptr. 567, 679 P.2d 1]; Jefferson, Cal. Evidence Benchbook (2d ed.) § 33.6, p. 1211.)

## 1. *Instructional Error*

■ As previously stated, the prosecution commenced the presentation of trial evidence with testimony from three witnesses relating to two prior sex offenses committed by Nottingham. The court had made a pretrial determination that the evidence as to each prior offense was relevant and admissible in regard to issues relating to intent and identity. Prior to the testimony of each victim of the prior acts, the trial court instructed the jury that the evidence was to be considered in regard to the issue of characteristic method, plan, or scheme to show intent, and to issues of identity and motive. At the close of the prosecution's case, the trial court determined outside of the jury's presence that the evidence presented earlier relating to Debra O. was not relevant to any issue of identity, but that it was relevant to the specific intent to rape issue.

When proceedings commenced again before the jury, the trial court instructed the jury that the testimony of Debra O. was to be considered only in regard to the issue of characteristic method, plan or scheme to show intent and to the issue of motive. At the time of jury instruction, the trial court instructed the jury that the other-acts evidence, without any distinguishing between the separate acts, was admissible in regard to the issue of

characteristic method, plan or scheme to show intent, and issues of identity and motive.

■ The trial court is normally not obligated to give *sua sponte* instructions in regard to the limited admissibility of evidence of prior bad acts at the time the jury receives the testimony. (*People* v. *Collie* (1981) 30 Cal.3d 43, 63 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].) But where the prior offenses admitted in sex offense cases " 'might be so obviously important to the case that *sua sponte* instruction would be needed to protect the defendant from his counsel's inadvertence [in failing to request a limiting instruction] . . .,' " a limiting instruction should be given *sua sponte*. (*People* v. *Willoughby* (1985) 164 Cal.App.3d 1054, 1067 [210 Cal.Rptr. 880].) Even if such an instruction is not required, when a trial court does undertake to give a limiting instruction specifically calling attention to the significance of the substantially prejudicial evidence of prior bad acts, it should do so accurately. (*People* v. *Key* (1984) 153 Cal.App.3d 888, 899 [203 Cal.Rptr. 144].)

■ The manner in which the jury in this case was instructed in regard to its consideration of other-crimes evidence was error. It is error for a trial judge to instruct as to separate issues in regard to which the evidence may be considered unless the evidence is relevant and admissible with respect to *each* of the issues. (*People* v. *Swearington* (1977) 71 Cal.App.3d 935, 947 [140 Cal.Rptr. 5].) The prosecution did not claim that the other-crimes evidence was relevant to any issue of motive, and there was no such issue raised during the trial proceedings. In addition, the final instructions told the jury that the Debra O. evidence could be considered in regard to an identity issue after the trial court had earlier determined to the contrary. The trial court has a duty to assist the jurors by telling them the precise issues to which the other-crimes evidence relates and to limit their consideration of such evidence accordingly. (*People* v. *Key, supra,* 153 Cal.App.3d at p. 899.) " 'It is error to give an instruction which correctly states a principle of law which has no application to the facts of the case.' " (*People* v. *Rollo* (1977) 20 Cal.3d 109, 122-123 [141 Cal.Rptr. 177, 569 P.2d 771]; *People* v. *Sanchez* (1947) 30 Cal.2d 560, 572 [184 P.2d 673].)

## 2. *Admissibility of the Evidence*

■ We turn now to an analysis of the admissibility of the prior acts testified to at trial. The prosecution was allowed to present evidence regarding the two prior sexual assaults in regard to a purported issue of intent. The courts have followed a clear line of authority which has established the proposition that evidence of other crimes may be placed before the trier of fact only "where the proof of defendant's intent is ambiguous, as when he

admits the acts and denies the necessary intent because of mistake or accident." (*People* v. *Kelley, supra,* 66 Cal.2d at pp. 242-243; *People* v. *Thomas* (1978) 20 Cal.3d 457, 467 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Tassel, supra,* 36 Cal.3d at p. 88, fns. 6, 7;[1] *People* v. *Perkins* (1984) 159 Cal.App.3d 646 [205 Cal.Rptr. 625]; *People* v. *Willoughby, supra,* 164 Cal.App.3d at pp. 1063-1064; *People* v. *Honaker* (1962) 205 Cal.App.2d 243, 244 [22 Cal.Rptr. 829].) In regard to this analysis, "[t]he fact that an accused has pleaded not guilty is not sufficient to place the elements of the crimes charged against him 'in issue.' [Citation.]" (*People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883].)

Although it is conceivable that the defendant in this case might have presented evidence which would have resulted in his having specifically placed his intent in issue such that the evidence of prior bad acts could be admitted, he clearly had not done so at the time the evidence was received. There was no evidence brought forth by the defense which would have left the intent issue in an ambiguous state. Permitting the evidence of other acts in regard to an issue of intent was therefore error.

■ Additionally, the trial court instructed the jury that it could consider the other-crimes evidence in regard to a characteristic method, plan, or scheme in order to prove intent. The indication that the evidence could be considered for "plan or scheme" adds nothing to the rationale for admissibility absent a material disputed factual issue in regard to intent.[2] There can be no contention that these three acts occurring over an eight-year period were integral components of a single conspiracy, conception, or plot. (*People* v. *Alcala, supra,* 36 Cal.3d at p. 634.) Any contention that the prior acts are relevant to show a characteristic method, plan, or scheme in

---

[1]*Tassel* raises questions as to when, if ever, prior sex offenses perpetrated against other victims may be used to show a defendant's intent. Prior cases had held that where a defendant admits a sexual act, but claims that the victim consented to the sexual act, he has placed his intent in issue sufficiently so that prior sex offenses may be proven in order to show his intent on the occasion specified. (See e.g., *People* v. *Pendleton* (1979) 25 Cal.3d 371, 376 [158 Cal.Rptr. 343, 599 P.2d 649].) In *Tassel,* the defendant raised a defense of consent to charges of rape and forcible oral copulation. The Supreme Court states in footnote 7, "[h]ere, however, there is nothing equivocal or ambiguous about defendant's intent. Whichever version of the facts is believed, defendant intended intercourse. On his evidence, Miss B. consented. On hers, he accomplished the intended act against her will by threats of bodily harm. Therefore the evidence of other sex offenses related to no issue in dispute except defendant's indifference to the matter of consent—in short, his disposition to rape." (*People* v. *Tassel, supra,* 36 Cal.3d at p. 88, fn. 7.)

[2]The separate rule that in sex offense cases prior sex offenses against other victims may be admitted under certain circumstances to show a common plan, scheme or design without further examination of their bearing on intent, identity or other disputed issues has been overruled. (See *People* v. *Alcala, supra,* 36 Cal.3d at p. 634, fn. 18; *People* v. *Moon* (1985) 165 Cal.App.3d 1074, 1081 [212 Cal.Rptr. 101].)

order to prove intent is circular. Where evidence of sexual activity is inconclusive in the instant offense, allowing evidence of prior sexual offenses merely to show aggressive sexual tendencies so that the jury can infer an intent to rape in the case before it is to allow proof of an intent to rape by means of evidence of criminal disposition. (*People* v. *Guerrero, supra,* 16 Cal.3d at p. 728.)

The other purported ground of relevancy of the prior acts which were the subject of testimony in this trial related to the issue of identity. The identity of Ms. Davidson's killer was obviously an issue of critical importance in these trial proceedings. "Where the prosecution seeks to fix responsibility for a particular crime on defendant by showing a consistent modus operandi, there must be common marks which, considered singly or in combination, support the strong inference that the current crime bears his signature. [Citations.]" (*People* v. *Alcala, supra,* 36 Cal.3d at p. 632.) This distinctive modus operandi has been referred to as "the criminal's calling card." (*People* v. *Tassel, supra,* 36 Cal.3d at p. 86.) The inference of identity arises when the marks common to the charged and uncharged offenses logically operate to set the charged and uncharged offenses apart from other crimes of the same general variety and, in so doing, tend to suggest that the perpetrator of the uncharged offenses was the perpetrator of the charged offense. (*People* v. *Haston, supra,* 69 Cal.2d at p. 246.) It is the *distinctiveness* between any such common marks which gives logical force to the inference of identity; and, if the inference is weak, the probative value is weak, and the court's discretion should be exercised in favor of exclusion. (*Id.,* at p. 247.)

In evaluating those common marks, the strength of the inference in any case depends upon two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks. (*People* v. *Thornton* (1974) 11 Cal.3d 738, 756 [114 Cal.Rptr. 467, 523 P.2d 267]; *People* v. *Barney* (1983) 143 Cal.App.3d 490, 496 [192 Cal.Rptr. 172].) Also, "[i]n evaluating the degree of commonality between the charged and the uncharged offenses, the *circumstances* in which the crimes were committed as well as the facts of the crimes themselves are considered. [Citations.]" (*People* v. *Willoughby, supra,* 164 Cal.App.3d at p. 1066.) Finally, it is necessary to not only compare the number and distinctiveness of the points of similarity between the two crimes but also the number and distinctiveness of the points of dissimilarity between those offenses in order to ascertain whether there is a distinctive pattern of circumstances which gives logical force to an inference of identity. (*People* v. *Harvey* (1984) 163 Cal.App.3d 90, 101, fn. 2 [208 Cal.Rptr. 910].)

The Attorney General contends that there are a variety of common marks connecting the prior offenses to the instant crime. Because the trial

court properly ruled during the trial proceedings that the prior act involving Debra O. was not relevant to the issue of identity, we will only analyze the prior act involving Katherine S. in regard to relevance to the identity issue. The first similarity is that both victims were young women who were relatively casual acquaintances of the appellant. Katherine S. was 14 years old at the time of the prior offense, and Ms. D. was 22 years old at the time of the instant offense. Appellant had known Katherine S. for something less than a year, they had lived in the same apartment complex, and Katherine had apparently had a great deal of contact with appellant's family. The evidence indicates that appellant knew Ms. D. for several months and that prior to the evening in question she had neither met appellant's family nor been to his home.

The next alleged similarity is that both victims resided in the same general neighborhood as the appellant. This is a similarity, but not a distinctive common mark. The third is that both offenses occurred in remote locations. The Katherine S. offense had occurred at a canyon area where young people would meet, ride motorcycles in the hills and swim in a pond. The offense occurred during daylight hours. Ms. D.'s body was recovered from a rural area some distance from town. The evidence is inconclusive in regard to where the killing actually occurred, but she was apparently killed late at night.

Each of the victims had force applied to the neck area and had their clothing ripped. Beyond this general statement, the use of force was substantially different in the two offenses. It is also unfortunately the case that in the repugnant crime of rape it is not uncommon for the perpetrator to apply force to the neck of the victim. (See recent examples in *People* v. *Tassel, supra,* 36 Cal.3d 77; *People* v. *Reeder* (1984) 152 Cal.App.3d 900 [200 Cal.Rptr. 479].) Neither is the tearing of clothing unusual in the crime of forcible rape. Katherine S. had hands placed around her neck which startled her but did not cut off her breath or cause pain. She was not struck by appellant but had her blouse and bra ripped. Ms. D. was savagely beaten around the head and had a number of contusions and abrasions on her body, apparently from the forcible removal of all of her clothing. Her blouse was used as an instrumentality of death, and it had been tied in a double granny knot during her strangulation. The force used in the prior act apparently left no permanent physical injuries, while the force used in the instant offense caused death.

There are some similarities between the Katherine S. incident and the instant offense, but those common marks are not distinctive to the point that they give logical force to an inference of identity. The court's exercise of discretion should have led to an exclusion of the evidence of prior bad acts.

The evidence had the effect of demonstrating appellant's disposition to commit sex offenses, in violation of Evidence Code section 1101, subdivision (a), and was prejudicial error.[3] Even if relevance had been able to be established as to the evidence of prior acts, the evidence should have been excluded pursuant to Evidence Code section 352 because the prejudice inherent in the evidence outweighed any probative value.

Because the jury was not instructed in regard to a requirement that it find an intent to kill in regard to the felony-murder conviction, and because inadmissible evidence of prior acts was placed before the jury with improper instruction in regard to its consideration, and because it is reasonably probable that absent such errors a result more favorable to the defendant would have been reached (*People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243] cert. den., 355 U.S. 846 [2 L.Ed.2d 55, 78 S.Ct. 70]), appellant's conviction must be and is reversed.[4]

Stone, P. J., and Abbe, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 5, 1985. Mosk, J., was of the opinion that the petition should be granted.

---

[3]The prejudice was exacerbated by the trial court having allowed two witnesses to testify over defense objection as to Katherine S.'s later suicide attempt, evidence which is totally irrelevant to any common marks identity issue and which was highly inflammatory in nature.

[4]Appellant's counsel properly points out that there was error in the manner in which the offense was charged, which should be rectified in further proceedings. "Whenever a special circumstance requires proof of the commission or attempted commission of a crime, such crime shall be *charged* and proved pursuant to the general law applying to the trial and conviction of the crime." (Pen. Code, § 190.4, subd. (a), italics added; see also *People* v. *Mattson* (1984) 37 Cal.3d 85, 94 [207 Cal.Rptr. 278, 688 P.2d 887].)