[Civ. No. 54712. Second Dist., Div. One. Sept. 27, 1979.]

Estate of KENNETH R. TRUCKENMILLER, Deceased.
BRUCE TRUCKENMILLER, as Administrator
With the Will Annexed, etc.,
Petitioner and Appellant, v.
NORMA FAYE WELLS et al., Claimants and Respondents.

328

**COUNSEL**

MacDonald, Halsted & Laybourne, Orville A. Armstrong and Michael K. Maher for Petitioner and Appellant.

Preston J. Kline and J. Paul Spector for Claimants and Respondents.

**OPINION**

**ROTHMAN, J.**\*—The administrator of an estate sought to set aside an *inter vivos* gift which decedent (Truckenmiller) allegedly gave as the result of the undue influence of the gift's recipients (Mr. and Mrs. Wells). Judgment was rendered for the recipients and against the administrator.

---

\*Assigned by the Chairperson of the Judicial Council.

The administrator appeals, contending that the trial judge erred in refusing to admit testimony at the trial to the effect that decedent told two people before he died that he had been "tricked" into the gift by the recipients.

## THE FACTS

In 1972, Kenneth R. Truckenmiller was a 68-year-old widower in poor physical health, but not mentally weak. He lived with a housekeeper, Bernice Synagogue, and knew claimant Norma Faye Wells for over three years. Mrs. Wells was married and living with her husband, claimant Clarence Wells. Mrs. Wells and Mr. Truckenmiller were close friends, and Mr. Truckenmiller would meet Mrs. Wells at her home several days each week during the horse racing season while her husband was away at work. Mr. Truckenmiller and Mrs. Wells would then go to the races together.

In January of 1972 Mr. Truckenmiller transferred 300 shares of Sears, Roebuck & Company stock (worth about $30,000) to himself and Mrs. Wells as joint tenants. A short time later the stock certificates were indorsed and sold, and the proceeds were deposited in Truckenmiller's account at the Bank of America on February 18, 1972. Most of the proceeds of this account were then used to purchase a five-unit building, with himself and Mrs. Wells as joint tenants. On April 27, 1972, decedent paid off the mortgage on the building. The total cost of the apartment building to decedent was approximately $68,000. He died on April 30, 1973, and Mrs. Wells claimed title as a surviving joint tenant.

When Truckenmiller died he left an estate of something over $100,000. His last will, dated March 2, 1959, left specific cash bequests to Viciente Lopez and Bernice Synagogue, and the residue to his surviving relatives (his siblings and their children). The will was admitted to probate. The administrator with will annexed filed a petition on behalf of the estate to establish a claim against certain property in the possession of Norma Faye Wells and her husband, Clarence Wells. In the first cause of action, it was alleged that in 1969 Truckenmiller gave property to the Wells as the result of the exercise of undue influence over decedent by Mrs. Wells. The second cause of action alleged that the Wells unlawfully obtained property from decedent.

In trial Mrs. Wells claimed that the gift was given to her out of love and friendship for her and Mr. Wells. Petitioner claimed that the transaction

was the consequence of pressure on decedent by Mr. and Mrs. Wells because they had placed Truckenmiller in a compromising situation.

In the trial without a jury the court excluded the testimony of Mrs. Leah Lamb Poyet and Mrs. Bernice Synagogue. The testimony of Mrs. Poyet, decedent's friend, would have been that within a year before Mr. Truckenmiller's death she met him at Los Alamitos Race Track. He told her "he had bought a duplex; he was tricked into it . . . by this friend of his and her husband." On another occasion, "He told me he had been tricked into buying a duplex, and he wanted an attorney and wanted to know if my husband [Mrs. Poyet's husband was a lawyer] would call him."

The testimony of Mrs. Bernice Synagogue, decedent's housekeeper for over 20 years, would have been that Truckenmiller told her that he bought an apartment house for Mrs. Wells. When Mrs. Synagogue asked why, "Then he said, 'I have been tricked.' And he said, 'Bernice, I cannot tell you anything about it right now.' " When she asked what he meant by being tricked, "He said, 'Well,' he says, 'I have—he caught me in the bed with his wife, Mr. Wells did.' " And further, "He said, 'Please don't talk to me any more about it, because I'm very hurt.' He says, 'I can't talk to you about it.' " She testified that Truckenmiller then fell across the bed and she had to get him some oxygen. In ruling in favor of the defendant's motion for judgment after the petitioner's case under Code of Civil Procedure section 631.8, the trial judge said that he believed that Truckenmiller made the statements to Mrs. Poyet.

In this appeal, petitioner's sole contention is that the court committed prejudicial error in excluding the above described testimony of Mrs. Poyet and Mrs. Synagogue.

## DISCUSSION

In California: "The consent of the parties to a contract must be: . . . free; . . ." (Civ. Code, § 1565.)[1] "An apparent consent is not real or free when obtained through: . . . Undue influence; . . ." (Civ. Code, § 1567.) "Undue influence consists: [¶] 1. In the use, by one of whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; [¶] 2. In taking an unfair advantage of another's

---

[1]These rules are equally applicable in cases of gifts (cf. *O'Neil* v. *Spillane*, 45 Cal.App.3d 147 [119 Cal.Rptr. 245]).

weakness of mind; or, [¶] 3. In taking a grossly oppressive and unfair advantage of another's necessities or distress." (Civ. Code, § 1575.)

Petitioner alleged that Mrs. Wells obtained the property from Mr. Truckenmiller in that she "gained undue and controlling influence over the decedent's mind and action, whereby his natural and free will was overborne and her own will substituted for it. . . ."[2]

Even though Mr. Truckenmiller was of sound mind, and even though there may not have existed a relationship of trust or confidence, a case for undue influence could be made from a showing that the donee had been coerced into giving the gift by some threat as the result of catching the donee in an indiscretion: i.e., the taking of "unfair advantage of another's . . . distress." (See *McIntosh* v. *McIntosh* 209 Cal.App.2d 371 [26 Cal.Rptr. 26], a document executed under circumstances where person was under fear of beatings and threats; and *Helmick* v. *Thomas,* 187 Cal.App.2d 395 [9 Cal.Rptr. 512], an agreement obtained by threat.)

Accordingly, the donee's state of mind at the time of the gift or deed would be an issue in an action where undue influence was alleged. For example, under subdivision 1 of Civil Code section 1575, a showing that one held authority over another for the purpose of securing an unfair advantage would, in part depend on proof as to the person's mental state. So too, under subdivision 2, of Civil Code section 1575, weakness of mind could obviously be shown by evidence of state of mind, and under subdivision 3, the state of mind of an individual would bear on whether an unfair advantage was taken.

■ An out-of-court declaration of the then existing state of mind of declarant or of his state of mind at any other time is admissible to prove the existence of the past state of mind so long as: the declarant is unavailable, there are no circumstances indicating a lack of trustworthiness in the statements, the state of mind is an issue in the case, and the declaration is not used to prove directly or circumstantially declarant's acts or conduct in conformity with that past state of mind, or to prove the fact remembered or believed in the declaration. (Evid. Code, §§ 1250-

---

[2]Claimants understood that the theory of the case rested on any of the bases in section 1575. In their trial brief, claimants told the court: "[U]ndue influence must arise from a feeling on the part of the grantor that the grantee has some power or authority over him, which the grantee uses on the will of the grantor for the purpose of obtaining an unfair advantage of his weakness of mind or body, or his necessities or distress. Such feeling of power or authority must be actually present and operating on the grantor's mind as to overpower it and overcome his volition at the time the deed is executed."

1252; Jefferson, Cal. Evidence Benchbook (1972) State of Mind or Physical Sensation, § 14.3, p. 178.)[3]

■ The trial court here erroneously concluded that a declaration as to a state of mind at a time prior to the making of the declaration was inadmissible. In *Whitlow* v. *Durst* 20 Cal.2d 523, 524 [127 P.2d 530], the court held that "When intent is a material element of a disputed fact, declarations of a decedent made after as well as before an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, . . ." In explaining this exception, the Supreme Court stated in *People* v. *One 1948 Chevrolet Conv. Coupe*, 45 Cal.2d 613, 621 [290 P.2d 538, 55 A.L.R.2d 1272], that this rule exists ". . . apparently on the theory that under these particular circumstances '[t]he stream of consciousness has enough continuity so that we may expect to find the same characteristics for some distance up or down the current.' "

Although the power of a person's state of mind at a given point might fade with the passage of time, there are no set time limits on declarations of past state of mind. We deem it to be a question for the trier of fact as to whether in a given case under all the circumstances the "stream of consciousness" was intact or had been broken by the passage of time. In the instant case, there might well have been a sufficient basis in the record for a finding to support a "stream of consciousness," but the court never considered the question.

[3]Evidence Code section 1250 provides that: "(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, . . . mental feeling . . .) is not made inadmissible by the hearsay rule when:

"(1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or

". . .

"(b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed."

Evidence Code section 1251 provides: "Subject to Section 1252, evidence of a statement of the declarant's state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) at a time prior to the statement is not made inadmissible by the hearsay rule if:

". . .

"(b) The evidence is offered to prove such prior state of mind, emotion, or physical sensation when it is itself an issue in the action and the evidence is not offered to prove any fact other than such state of mind, emotion, or physical sensation."

Evidence Code section 1252 provides: "Evidence of a statement is inadmissible under this article if the statement was made under circumstances such as to indicate its lack of trustworthiness."

Moving, then, to the statements themselves, the decedent is alleged to have said that he had been "tricked" into buying the property a year earlier, and that Mr. Wells caught him in bed with Mrs. Wells. When the statements were made, Mr. Truckenmiller said that he was "very hurt" and he showed signs of distress concerning the subject. He also asked about consulting a lawyer.

Three of the elements for admissibility are easily met under the Evidence Code provisions set out above. The declarant was dead and unavailable, there was no circumstance such as to indicate a lack of trustworthiness, and the declarant's past state of mind was an issue in the case. The only element remaining is whether or not the declarations themselves proved past state of mind or were a remembrance of a past event. Put another way, we must determine whether the statements were admissible evidence of decedent's state of mind or inadmissible testimony offered to prove the truth of the matters declared.

Wigmore points out that the hearsay rule applies to any "testimonial" use of an out-of-court declaration, and does not apply to the "circumstantial" use. "To such a [circumstantial] use, then, the hearsay rule makes no opposition, because the utterance is not used for the sake of inducing belief in any assertion it may contain. The assertion, if in form there is one, is to be disregarded, and the direct inference alone regarded. . . ." (6 Wigmore, Evidence (Chadbourn rev. ed. 1976) § 1790, p. 320.) "The testator's *assertion that a person,* named or unnamed, has procured him by *fraud* or by *pressure* to execute a will or to insert a provision, is plainly obnoxious to the hearsay rule, if offered as evidence that the fact asserted did occur: [¶] Colt, J., in *Shailer* v. *Bumstead,* 99 Mass. 112, 122 (1868): 'When used for such purpose, they are mere hearsay, which by reason of the death of the party whose statements are so offered, can never be explained or contradicted by him. . . .' [T]hey are thus inadmissible so far as they form 'a declaration or narrative to show the fact of fraud or undue influence at a previous period.'" (6 Wigmore, *supra,* § 1738, p. 178.) But, Wigmore says, the declarations "may be used as evidence of the testator's *mental condition* . . ., if the latter fact is relevant. . . . Thus the question is reduced to a simple one, namely, What particular mental conditions of the testator, thus evidenced, are material as being involved in the broader issue of deception or undue influence?" (6 Wigmore, *supra,* pp. 180-181; see *Estate of Sproston,* 4 Cal.2d 717, 722 [52 P.2d 924].)

The declarations by Mr. Truckenmiller contained both admissible evidence of his state of mind at the time he made the gift (a belief that he

had been "tricked"), and inadmissible hearsay statements (Mr. Wells caught him in bed with Mrs. Wells and that they "tricked" him). Under such circumstances Evidence Code section 355 authorized the trial court to exclude the inadmissible hearsay, and admit evidence of decedent's state of mind for that limited purpose. ■ This leaves us with a final inquiry: Was the failure to allow the admission of the testimony of Mrs. Synagogue and Mrs. Poyet for the limited purpose noted above prejudicial error?

■ "Undue influence is established when it is shown that the testamentary disposition was brought about by undue pressure, argument, entreaty or other coercive acts that destroyed the testator's freedom of choice so that it fairly can be said that he was not a free agent when he made his will [citation]; undue influence can be established by circumstantial evidence so long as the evidence raises more than a mere suspicion that undue influence was used; the circumstances proven must be inconsistent with the claim that the will was the spontaneous act of the testator." (*Estate of Franco,* 50 Cal.App.3d 374, 382 [123 Cal.Rptr. 458].) Clear and convincing proof is required. (*Hansen v. Bear Film Company, Inc.,* 28 Cal.2d 154, 173 [168 P.2d 946].) Undue influence will not be inferred from "slight evidence." (*Estate of Anderson,* 185 Cal. 700, 719 [198 P. 407]; *People v. Hamilton,* 55 Cal.2d 881, 894 [13 Cal.Rptr. 649, 362 P.2d 473].) In *Benwell v. Dean,* 249 Cal.App.2d 345, 354-355 [57 Cal.Rptr. 394], and *Estate of Carson,* 74 Cal.App. 48, 53 [239 P. 364], other equally plausible noncoercive inferences could have been drawn from the utterance.

■ To set aside a gift on the basis of undue influence there must be evidence of some act or conduct on the part of the donees, and the court cannot base a finding on the belief of the donor alone, unless the donor was mentally infirm. In the instant case, confining the testimony of Mrs. Synagogue and Mrs. Poyet to that which showed the admissible state of mind of Mr. Truckenmiller, the evidence would have been insufficient to support a finding of undue influence even if that testimony had been admitted for that limited purpose. The only admissible evidence would have been that decedent believed that he had been tricked. The evidence could not have been considered to prove that Mr. and Mrs. Wells in fact tricked him or took an unfair advantage of a compromising situation.[4]

---

[4] After reviewing the entire record, we can find no other evidence going to undue influence. Petitioner claims that we can infer something was amiss from the joint tenancy transaction. However, such would clearly be the kind of "slight" evidence referred to in *Estate of Anderson, supra.*

We can find no authority in California or elsewhere that would support a finding of undue influence merely on the belief of the donor, where the donor was mentally competent and there was no admissible evidence that the donee did anything untoward. Accordingly, we hold that even though the proffered evidence should have been admitted for a limited purpose, there was no prejudice to the plaintiff since the trial court could not have found for plaintiff had it considered the evidence for that limited purpose.

The judgment is affirmed.

Lillie, Acting P. J., and Hanson, J., concurred.