[No. A045376. First Dist., Div. Four. June 21, 1990.]

Estate of GUILLERMO SARABIA, Deceased.
FREDERICK WINSTON, Contestant and Appellant, v.
LEONARD C. GIBBS, Claimant and Respondent.

COUNSEL

Carr & Mussman, William E. Mussman and William E. Mussman III for Contestant and Appellant.

Carr, Smulyan & Hartman, George M. Carr and Yale H. Smulyan for Claimant and Respondent.

OPINION

POCHÉ, J.— ■  The law of California allows a will to be refused admission to probate if it is the product of undue influence exercised by a

beneficiary under the will. A person contesting a will on this ground is aided by a presumption of undue influence if the contestant produces evidence that the beneficiary (1) had a confidential relationship with the decedent (2) was active in procuring the will and (3) "unduly" profited from it. The issue presented on this appeal by a losing contestant is whether the probate court erred in not instructing the jury that the concept of undue profit has a purely quantitative definition. In light of its radical departure from existing precedent and practices governing will contests, we reject this contention and affirm.

## BACKGROUND

Decedent Guillermo Sarabia (also known as William Winston) was a professional opera singer who spent almost all of his adult life living and working in Europe. Beginning in 1978 decedent lived first in Germany and then in the Netherlands with Leonard C. Gibbs, who acted as the paid manager/agent for most of decedent's financial affairs and took care of running their household. Decedent died of a heart attack in Amsterdam in September of 1985 leaving an estate estimated at approximately $500,000, almost all of which was his share of his recently deceased mother's estate.[1] Gibbs was the sole beneficiary of a will allegedly executed by decedent in Amsterdam in June of 1984. Gibbs filed a petition asking that the will be admitted to probate and that he be authorized to administer the estate.

The decedent's closest living relative was his brother Frederick Winston (also known as Frederick Sarabia).[2] He filed a contest of the will on the ground that it was the product of Gibbs undue influence over decedent.[3] Upon request of both parties a jury was empaneled[4] and heard testimony for six days.

Before the jury commenced its deliberations, the probate court instructed it with BAJI No. 12.17 as follows: "If you find that a confidential relationship existed between the decedent and Leonard Gibbs, that Leonard Gibbs

---

[1] It appears that decedent's property in Europe is not involved with the probate proceeding in this state.

[2] Both decedent and Winston were born in Mexico. After their mother brought them to California and remarried, Winston adopted his stepfather's name; decedent preferred to keep his baptismal name.

We use the word "closest," not in its obvious imports of physical proximity or emotional intimacy, but in its mixed legal and biological sense. In addition to Winston, decedent was survived by his three maternal aunts.

[3] Winston also challenged the validity of the will on the ground that the signature it bore was not that of decedent. One of the determinations made by the jury as part of the special verdict was that decedent did sign the will. Winston does not challenge that determination on this appeal.

[4] Our intervention was required to relieve Winston of his earlier waiver of a jury trial. (See *Winston* v. *Superior Court* (1987) 196 Cal.App.3d 600 [242 Cal.Rptr. 113].)

was active in obtaining the will and unduly profited from it, you will find that the will was obtained by the undue influence of Leonard Gibbs unless he establishes by a preponderance of the evidence that the will was not the result of undue influence." The jury thereafter sent a note to the court requesting that it "Please elaborate on the word 'unduly' as best you can." Over Winston's objection, the court instructed the jury that "generally it is something that's unwarranted, excessive, inappropriate, unjustifiable or improper."

Nineteen minutes later the jury returned its special verdict with interrogatories. The jury unanimously found that although Gibbs "was in a confidential relationship with decedent," and "was active in procuring the will," he was not "unduly benefited [*sic*] under the will." Winston filed a timely notice of appeal from the ensuing judgment.[5]

## REVIEW

■ As a general proposition, California law allows a testator to dispose of property as he or she sees fit without regard to whether the dispositions specified are appropriate or fair. (See *Estate of Fritschi* (1963) 60 Cal.2d 367, 373 [33 Cal.Rptr. 264, 384 P.2d 656]; *Kelly* v. *McCarthy* (1936) 6 Cal.2d 347, 352 [57 P.2d 118]; *Jacobs* v. *Gerecht* (1970) 6 Cal.App.3d 808, 811 [86 Cal.Rptr. 217]; see also BAJI No. 12.02.) ■ Testamentary competence is presumed. (See *Estate of Fritschi, supra*, at p. 372; *Estate of Goetz* (1967) 253 Cal.App.2d 107, 112-113 [61 Cal.Rptr. 181].)

This presumption can be overcome if it is shown that the testator was affected by undue influence, a concept with a very definite meaning. "Illustrative expressions of the courts demonstrate the stringency with which they protect the testamentary disposition against the attack of undue influence. Thus such influence must 'destroy the testator's free agency and substitute for his own another person's will.' [Citation.] 'Evidence must be produced that pressure was brought to bear directly upon the testamentary act . . . . [The influence] must amount to *coercion* destroying free agency on the part of the testator.' [Citations.] '[T]he circumstances must be *inconsistent* with voluntary action on the part of the testator' [citation]; and '[the] mere opportunity to influence the mind of the testator, even coupled with

---

[5] The judgment specifies that "The document filed herein, dated June 27, 1984, is the last will of the deceased, Guillermo Sarabia, also known as William Winston." The record does not include an order admitting the will to probate. Because the court and the parties appear to have treated the judgment as the functional equivalent of such an order, the judgment will be deemed appealable. (See Prob. Code, § 7240, subd. (b).) The judgment is appealable for the additional reason that it appoints Gibbs as administrator with the will annexed. (*Id.*, subd. (a).)

an interest or a motive to do so, is not sufficient.' " (*Estate of Fritschi, supra,* 60 Cal.2d 367 at pp. 373-374 [original italics].) Undue influence, then, is the legal condemnation of a situation in which extraordinary and abnormal pressure subverts independent free will and diverts it from its natural course in accordance with the dictates of another person. (See *Estate of Baker* (1982) 131 Cal.App.3d 471, 480, 486 [182 Cal.Rptr. 550]; *Estate of Truckenmiller* (1979) 97 Cal.App.3d 326, 334 [158 Cal.Rptr. 699]; *Estate of Franco* (1975) 50 Cal.App.3d 374, 382 [122 Cal.Rptr. 661, 123 Cal.Rptr. 458].) It is akin to fraud. (See *Estate of Garibaldi* (1961) 57 Cal.2d 108, 114 [17 Cal.Rptr. 623, 367 P.2d 39].)

■ The presumption in favor of a will may be neutralized by a presumption that undue influence was brought to bear on the testator. The presumption of undue influence arises only if *all* of the following elements are shown: (1) the existence of a confidential relationship between the testator and the person alleged to have exerted undue influence; (2) active participation by such person in the actual preparation or execution of the will, such conduct not being of a merely incidental nature; and (3) undue profit accruing to that person by virtue of the will. If this presumption is activated, it shifts to the proponent of the will the burden of producing proof by a preponderance of evidence that the will was not procured by undue influence. It is for the trier of fact to determine whether the presumption will apply and whether the burden of rebutting it has been satisfied. (See e.g., *Estate of Lingenfelter* (1952) 38 Cal.2d 571, 585 [241 P.2d 990]; *Estate of Baker, supra*, 131 Cal.App.3d 471 at pp. 480, 483; *Estate of Clegg* (1978) 87 Cal.App.3d 594, 602 [151 Cal.Rptr. 158]; *Estate of Gelonese* (1974) 36 Cal.App.3d 854, 861-863 [111 Cal.Rptr. 833]; *Estate of Evans* (1969) 274 Cal.App.2d 203, 211-212 [79 Cal.Rptr. 1].)

■ The jury's verdict leaves no doubt that the first and second elements needed to activate the presumption of undue influence were established. With respect to the remaining factor of the beneficiary unduly profiting from the will, Winston challenges the probate court's supplementary instruction on the ground that it was couched in *qualitative* terms. As he sees it, "the word 'unduly' has only a *quantitative* meaning: it means nothing more than that the beneficiary takes substantially more under the will he procured than he would otherwise have taken. . . . [T]he evidence is uncontradicted that Gibbs was not related by blood to [decedent], that Gibbs would have taken nothing of [decedent's] by inheritance in the absence of the will in question, and that Gibbs takes everything of [decedent's] under that will. On this evidence, the court below was obligated to instruct the jury that Gibbs *had* 'unduly profited' by the will as that term was used" in BAJI No. 12.17 as a matter of law. (Original italics.)

There is some authority which lends a semblance of support to Winston's position. For example, in *Estate of Lances* (1932) 216 Cal. 397 [14 P.2d 768], the decedent's uncle contested a will whose proponent and sole beneficiary was an attorney who prepared the will. Our Supreme Court noted that the attorney was confronted by "an uncontradicted showing that he unduly profited by the terms of the will. He was to receive the whole of the estate . . . to the prejudice of the heirs of the decedent." (*Id.* at p. 403.) These comments served as the basis for several subsequent decisions in which it was declared that "[t]he question as to whether the proponent unduly profited by the will is solved by the terms of the will itself." (*Estate of Bucher* (1941) 48 Cal.App.2d 465, 473 [120 P.2d 44]; accord *Estate of Baker, supra,* 131 Cal.App.3d 471 at pp. 480-481; see *Estate of Trefren* (1948) 86 Cal.App.2d 139, 149 [194 P.2d 574] ["If there had been no will respondent would have received all of [the decedent's] property and appellant none."].)

A proper appreciation of the peculiar contexts in which these remarks were made, however, largely vitiates the support Winston sees them as providing. In *Lances* the probate court had in effect directed the jury to return a verdict in favor of the will's proponent. The Supreme Court reversed this decision, concluding that the evidence produced required "that the issue of undue influence was one for the determination of the jury." (*Estate of Lances, supra,* 216 Cal. 397 at pp. 404-405.) In *Bucher* the jury returned a verdict finding that undue influence had been exerted, but the probate court granted the proponent's motion for judgment notwithstanding the verdict. The contestant appealed. Upon concluding that "the evidence was sufficiently substantial to have permitted the jury to find that there was undue influence practiced upon the decedent," the Court of Appeal reversed with the direction that the probate court "enter judgment upon the verdict as rendered." (*Estate of Bucher, supra,* 48 Cal.App.2d 465 at pp. 467, 474.) *Trefren* and *Baker* found the appellate courts sustaining jury verdicts that the will's proponent had exerted undue influence on the deceased testator against the proponent's claim that substantial evidence for the verdict was lacking. Each court, after reviewing the record, determined that "we do not believe that it can be held that there is no evidence in the record from which a jury would be justified in concluding that appellant . . . unduly profited by the will." (*Estate of Trefren, supra,* 86 Cal.App.2d 139 at p. 149; *Estate of Baker, supra,* 131 Cal.App.3d 471 at p. 481.)[6] The common theme is appellate court respect for the province and product of the jury empaneled to decide a contest involving a claim of undue influence. In none of these decisions did the reviewing court hold in the abstract that sole beneficiary status amounts to undue profit as a matter of law.

---

[6] To the same effect are *Estate of Peters* (1970) 9 Cal.App.3d 916, 923 [88 Cal.Rptr. 576], and *Estate of Evans, supra,* 274 Cal.App.2d 203 at pages 214-215.

We cannot agree with the way Winston construes the "by the terms of the will itself" remarks made in these decisions. The implicit premise is that the omitted heir has some entitlement to the decedent's bounty that is superior to the beneficiary designated by the testator. This premise is contrary to the fundamental principle of testamentary independence. Winston's proposed definition of when a beneficiary is "unduly profited" complicates matters still further. By requiring the trier of fact to determine when a beneficiary takes "substantially more" under the will than the beneficiary would take without the will, Winston proposes an unworkable standard. It likewise presumes that the contestant has some entitlement to the decedent's property. A more fundamental difficulty is that it assumes the amount of that entitlement is somehow self-evident; only by knowing what has been shifted from the contestant to the proponent can it be determined whether the proponent is taking "substantially more" than he or she would take in the absence of the will.

■ For the trier of fact to decide what influence was "undue" clearly entails a qualitative assessment of the relationship between the decedent and the beneficiary; to know what influence was "undue" requires knowledge of what influence, if any, would qualify for a more benign interpretation. "[I]nfluence which reaches the stage of being undue influence is not at all the same in every case. In one case it takes but little to unduly influence a person; in another case much more. . . . Accordingly, every case must be viewed in its own particular setting." (*Estate of Bucher, supra*, 48 Cal.App.2d 465 at p. 474; see *Estate of Peters, supra*, 9 Cal.App.3d 916 at p. 923.) ■ If the trier of fact is empowered to check for "unnatural" provisions of the will as an indicator of undue influence (see *Estate of Lingenfelter, supra*, 38 Cal.2d 571 at pp. 583, 585), it follows as a matter of simple corresponding logic that the trier is empowered to decide what would constitute natural provisions. ■ To determine if the beneficiary's profit is "undue" the trier must necessarily decide what profit would be "due." These determinations cannot be made in an evidentiary vacuum. The trier of fact derives from the evidence introduced an appreciation of the respective relative standings of the beneficiary and the contestant to the decedent in order that the trier of fact can determine which party would be the more obvious object of the decedent's testamentary disposition. (See *Estate of Mann* (1986) 184 Cal.App.3d 593, 612-613, & fns. 10-11 [229 Cal.Rptr. 225].) That evidence may include dispositional provisions in previous wills executed by the decedent (see *Estate of Lingenfelter, supra*, at p. 584), or past expressions of the decedent's testamentary intentions. (See *Estate of Garibaldi, supra*, 57 Cal.2d 108 at p. 113.) It may also encompass a showing of the extent to which the proponent would benefit in the absence of the challenged will. (See *Estate of Pellegrini* (1955) 138 Cal.App.2d 143, 146 [291 P.2d 558].) If these factors are proper for consideration, it is

therefore patently simplistic to say that the issue of undue profit is to be "solved by the terms of the will itself."

Winston's desire to limit the trier of fact's inquiry to "the terms of the will itself" appears to transplant the law of intestate succession as the litmus for undue profit. Although intestate succession is usually pertinent to establishing the contestant's standing, it has the potential for directing too much of the trier of fact's attention to the presence or absence of "unnatural" provisions in the will. Because the law of intestate succession is confined to the decedent's relatives, the test advanced by Winston would invariably work to the advantage of relatives. The test thus threatens to impinge on the testator's right and freedom to devise property to persons or entities with whom the testator has no genetic or legal relationship. Winston's test could produce bizarre results.[7] ▆▆ ▆▆▆▆ It is confusing[8] and unworkable, and its omission from the supplementary instruction was therefore proper.

▆▆ Given that Winston was only a collateral heir to decedent, he would not be a natural object of decedent's testamentary disposition. (See *Estate of Arnold* (1940) 16 Cal.2d 573, 588 [107 P.2d 25]; *Estate of Ventura* (1963) 217 Cal.App.2d 50, 60 [31 Cal.Rptr. 490].) The jury heard considerable evidence that as his life shifted to Europe, decedent's affection for Winston waned while his attachment to Gibbs waxed. Numerous witnesses testified concerning decedent's oft-expressed desire to leave everything to Gibbs. Accordingly, "this is not the case of an 'unnatural will' where dependents and those who had grown accustomed to lean upon the bounty of one are, at the death of that person, without apparent reason, deprived by his will of that bounty. Nor is it a will where relations, intimate in fact as

---

[7] As an example, suppose that after 50 years of being wooed by Harold, Annabelle finally surrenders to his entreaties and agrees to marry him. Annabelle has substantial assets. Harold is a pauper. Annabelle's only living relative is her sister Dolores. Harold suggests to Annabelle that as soon as they are married they each execute a will designating the other as the sole beneficiary. Suppose further that the giddy couple rush straight from the altar to the attorney's office and execute the wills, whereupon Annabelle drops dead while still wearing her wedding dress.

There is no community property. Under the will, Harold would get everything. Under the law of intestate succession, he and Dolores would each get one half of the decedent's estate. (Prob. Code, § 6401, subd. (c)(2)(B).) According to Winston's proposed standard, Harold could stand accused of unduly profiting from his exertion of undue influence, which seems fairly unnatural.

[8] "Where the same word (or root variations thereof) is used in the same statute, it will not be used in two different senses." (*Santa Clara County Dist. Attorney Investigators Assn.* v. *County of Santa Clara* (1975) 51 Cal.App.3d 255, 263, fn. 4 [124 Cal.Rptr. 115].) No reason suggests itself why the same rule should not be equally applicable to jury instructions. Winston thus undercuts his argument that "unduly" (when used with "profited") as used in BAJI No. 12.17 has a *quantitative* meaning by conceding that "undue" (when used with "influence") in the same instruction has a *qualitative* meaning. It is difficult to conceive how confusion could have been avoided had the jury been instructed as Winston desired.

well as in blood, who have had a reasonable basis for their 'expectations' have been disappointed at the expression of the testator. [Decedent's] will left [his] property at [his] death where in life [ ]he had loved, and unless it shall be said that the claims of blood dominate and control the testamentary right (in which case the laws of wills should be swept from our statute books and all property pass under the laws of succession), the will in question was natural in its recognition of the claims of gratitude, affection, and love." (*Estate of Dolbeer* (1906) 149 Cal. 227, 232-233 [86 P. 695]; see *Estate of Mann, supra,* 184 Cal.App.3d 593 at p. 607.)

The issue of whether Gibbs unduly profited from the will was not established as a matter of law. The definition of "unduly profited" that Winston offered to the probate court would have restricted the scope of the jury's inquiry to a sterile examination of "the terms of the will itself." The probate court correctly recognized that to so confine the jury would be at odds with the qualitative assessment implicit in determining whether undue influence had been exerted by the proponent of a contested will. The supplementary instruction provided by the probate court correctly emphasized the qualitative nature of the ultimate issue to be decided by the jury.

The judgment is affirmed.

Anderson, P. J., and Perley, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 13, 1990.