Filed 7/30/21  P. v. Cassell CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHIZEM CASSELL,<br><br>    Defendant and Appellant. | B304875<br><br>(Los Angeles County<br>Super. Ct. No. TA145674) |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Lonergan, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

Chizem Cassell appeals his conviction for voluntary manslaughter (with a gun enhancement) and gun possession, for which the trial court sentenced him to a term of 33 years four months in prison.  Cassell contends the trial court violated his constitutional rights by failing to bifurcate admission of evidence of his gang affiliation; erred by allowing spectator misconduct to occur without admonishing the jury to disregard it; erred by failing to instruct on a duress defense as to the gun possession count; improperly admitted evidence of uncharged acts; and made a sentencing error.  He contends his convictions must be reversed.

For reasons stated below, we affirm.

## BACKGROUND

Just before midnight on March 20, 2018, Cassell and Tavarious Gammage, both members of the Rollin 60's street gang, approached a home occupied by Bryan Bowen, his father Willie Bowen, and his brothers Aaron Tanner and Vincent Bowen.  Cassell walked up to a car sitting in the driveway, pointed a gun at its occupant, Henry Nichols, and demanded money.  When Nichols said he had none, Cassell asked where the man with the gold chains was.  Nichols said he did not know.  Cassell then entered the house without knocking, with Gammage remaining outside.

Cassell, brandished a gun, punched Tanner in the face and asked, "Where's those gold chains at?"  Bryan entered wearing gold chains, and Cassell pointed the gun at him and demanded them.  Bryan punched Cassell and tried to grab the gun, and he and Tanner wrestled with Cassell.  Cassell shot Bryan in the back, after which the gun jammed.  Tanner stabbed Cassell and disarmed him.  Laverne Bowen and her son, Steven Ferrell,

2

arrived from next door, and Tanner, Vincent, and Ferrell beat Cassell with fists, a bat, and a chair, ultimately disabling him. During the beating, Cassell yelled for help from Gammage, and after he was subdued said, "60 sent me over here," and "I'm just over here because they sent me."

Bryan died at the scene.

Cassell was charged with murder (Pen. Code,[1] § 187, subd. (a)(1), attempted home invasion robbery (§§ 664, 211), first degree burglary (§ 459), second degree attempted robbery (§§ 664, 211), and unlawful firearm activity (§ 29820, subd. (b)), and it was alleged he personally discharged a firearm (§ 12022.53, subd. (d)) and the crimes were gang-related (§ 186.22, subd. (b)(1)(C)). Codefendant Gammage was charged similarly.

At trial, Cassell claimed he went to the Bowen house to buy drugs from Bryan, and became embroiled in a fight only because Bryan inexplicably struck him.

The jury found Cassell not guilty of murder but guilty of voluntary manslaughter and unlawful firearm activity, and found true that he personally discharged a firearm, but found not true that he committed the manslaughter to benefit a gang. The jury deadlocked on the remaining counts, and did so again after retrial. The jury found Gammage not guilty of murder and deadlocked on the remaining counts.

After finding in a bifurcated proceeding that Cassell had suffered a prior strike conviction (§§ 667, 1170.12), the trial court sentenced him to a total of 33 years four months in prison.

---

[1] Undesignated statutory refences will be to the Penal Code.

# DISCUSSION

## A. Bifurcation

The information alleged the crimes were gang-related, and the killing of Bryan Bowen qualified as special circumstance murder because it was done to further the interests of a gang, allegations the jury ultimately found to be not true.

Before trial, Cassell moved to bifurcate trial on the gang allegations. The prosecution opposed the motion, stating it anticipated that evidence would show that Cassell and Gammage were Rollin 60's gang members and that Cassell said after he was subdued, "60 sent me over here," and "I'm just over here because they sent me." The trial court denied the motion.

At trial, Laverne Bowen testified that Cassell said after he was subdued, "60 sent me over here," and "I'm just over here because they sent me," and Steven Ferrell testified Cassell said, "the 60's sent me."

Los Angeles Police Officer Gregory Sovick testified as a gang expert. He recognized Cassell and Gammage as Rollin 60's members, and identified the primary activities of the gang as burglaries, robberies, vandalism, graffiti, shootings, assaults with deadly weapons, homicides and drug trafficking. He identified Cassell as having the moniker "Will Kill." Officer Sovick opined based on a hypothetical that the crime was committed for the gang.

Cassell contends the trial court abused its discretion and violated his federal constitutional right to a fair trial by declining to bifurcate gang allegations and exclude gang evidence from the prosecution's case-in-chief. We disagree.

A trial court must limit the introduction of evidence and argument to relevant and material matters. (Evid. Code, § 1044.)

4

To carry out its duties, the court has discretion to bifurcate trial issues, including enhancements, so as to avoid the risk of undue prejudice to the defendant. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) "But evidence of gang membership is often relevant to, and admissible regarding, the charged offense. Evidence of the defendant's gang affiliation—including evidence of the gang's territory, membership, signs, symbols, beliefs and practices, criminal enterprises, rivalries, and the like—can help prove identity, motive, modus operandi, specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged crime. [Citations.] To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary. [Citation.]" (*Id*. at pp. 1049-1050.) The defendant must " 'clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.' " (*Id*. at p. 1050.) Denial of a motion to bifurcate gang allegations from trial on substantive offenses is reviewed for abuse of discretion. (*Id*. at p. 1040.)

Here, much of the gang evidence was relevant to the charged offense in that it helped the jury understand Cassell's motivation and Gammage's identity as an accomplice. The testimony that Cassell was the aggressor in the altercation and had said "60 sent me over here" was probative to show he went to the Bowen house to commit a crime, not, as he claimed, to purchase drugs.

Any prejudice was minimal to nonexistent. Bifurcation is appropriate where the gang evidence is "so extraordinarily prejudicial, and of so little relevance to guilt, that it threatens to sway the jury to convict regardless of the defendant's actual

5

guilt." (*People v. Hernandez, supra*, 33 Cal.4th at p. 1049.)  Here, the gang evidence appeared to have had no sway over the jury, which found the gang allegations to be untrue, acquitted Cassell of murder, and deadlocked on three counts as to both defendants.

Because the gang evidence was relevant to prove a fact of consequence, and its unduly prejudicial effect was minimal, the trial court was within its discretion to refuse bifurcation.  And it follows that doing so violated no federal due process right.  (See *People v. Foster* (2010) 50 Cal.4th 1301, 1335.)

Cassell argues that according to Laverne Bowen and Steven Ferrell, Cassell did not say "60 sent me over here" until after he was subdued.  He is correct, but he ascribes no particular importance to that distinction, and we discern none.  The issue informed by the gang evidence was Cassell's motive; the point at which that motive was revealed is immaterial.

Cassell argues that he did nothing to indicate when approaching or entering the Bowen house to indicate he was affiliated with a gang, and if the gang evidence had been bifurcated the only evidence of guilt would have been that he entered a house, perhaps with a gun and perhaps to buy cigarettes or drugs, fought a man there, was severely beaten by the group in the house, and killed a man during the violent struggles.  But this is precisely why the gang evidence should not have been bifurcated, as without it there would have been no way for the prosecution to prove its motive theory.

Cassell argues that by the time of closing argument the prosecution had abandoned its gang motive theory, but that appears to be a misreading of the record.  What the prosecution actually said was that Cassell saying "the 60s sent me" did not

establish a duress defense to murder, not that it failed to establish a motive for robbery.

**B. Spectator Misconduct**

On at least two days, some spectators in the courtroom during trial wore, over defense counsel's objection, pins and T-shirts with pictures of Bryan Bowen and messages such as "RIP Bryan" and "Long Live Bryan. Rest Easy, Baby." Cassell contends this violated his federal constitutional right to a fair trial. We disagree.

" ' "Spectator misconduct is a ground for mistrial if it is 'of such a character as to prejudice the defendant or influence the verdict,' " and the trial court has broad discretion in making this determination.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 758.)

Wearing a garment commemorating a victim is generally not of such a character. "[A]llowing some courtroom spectators to wear commemorative buttons depicting the likeness of a [victim] is not unduly suggestive of guilt. Defendant's claim to the contrary is an insult to the intelligence, integrity, and resolve of jurors. . . . [T]here is no reason to believe that the jurors, when faced with the image of a [victim], would be unable or unwilling to base their verdict solely on the evidence presented during the trial." (*People v. Zielesch* (2009) 179 Cal.App.4th 731, 745.) A court must determine the specific message conveyed in light of the particular facts and issues before the jury. (*People v. Houston* (2005) 130 Cal.App.4th 279, 318 [button with the victim's image "delivered an ambiguous message at best, were relatively passive, did not impart any facts outside the record to the jury, and did not involve misconduct by anyone wearing a cloak of official authority"].)

Here, no evidence suggests the adornments worn by spectators accused Cassell of anything, said that Bryan had been murdered, or expressed any sentiment but that individuals sympathetic to the victim were among those displaying his image.  The trial court was in the best position to assess the message of the adornments commemorating Bryan, and on this record we cannot conclude the court abused its discretion in finding them to be innocuous.

Cassell observes that in *People v. Houston*, the court twice admonished the jury to disregard spectator displays of the victim's likeness.  (*People v. Houston, supra*, 130 Cal.App.4th at p. 318.)  But no authority requires such an admonishment when the displays are truly innocuous, and it is possible that an admonishment here would have simply called more attention to them.  In this matter too, the trial court was in the best position to weigh the value of an admonishment against the message conveyed by the displays, and nothing in the record suggests it abused its discretion in opting not to admonish the jury.

## C.     Instruction on Firearm Possession

The information originally charged Cassell with a violation of section 29820, subdivision (b), possession of a firearm by a convicted felon.  The information was later amended to charge him with a violation of section 25820, carrying a loaded firearm, but at the close of evidence was amended back to the original charge.

The jury was instructed with CALCRIM No. 2511, which properly describes the elements of section 29820, although the instruction incorrectly referred to section 25850 instead of section 29820.

8

Cassell argues this mis-reference in the instruction to section 25850 constitutes an error, but fails to identify its significance. We discern none. CALCRIM No. 2511 properly instructed the jury. Although it should not have mentioned section 25850, there is scant possibility the jury applied the elements of that section to find Cassell guilty of violating section 29820.

## D. Duress Instruction

When discussing jury instructions at trial, defense counsel said that no evidence supported a duress defense, but the trial court gave one anyway, over a defense objection, as to the robbery and burglary counts. The court originally stated that some evidence supported giving the instruction as to the gun possession count as well, but in the end opted not to give one, giving no explanation.

Cassell contends the trial court erred by failing to give a sua sponte instruction on duress as to the gun possession count. We disagree.

A trial court must instruct on general principles of law relevant to the issues raised in a criminal case. (*People v. Koontz* (2002) 27 Cal.4th 1041, 1085.) The trial court must sua sponte instruct on a defense "if it appears that the [appellant] is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the [appellant's] theory of the case." (*People v. Maury* (2003) 30 Cal.4th 342, 424.) For example, "[a] trial court is required to instruct sua sponte on a duress defense if there is substantial evidence of the defense and if it is not inconsistent with the defendant's theory of the case." (*People v. Powell* (2018) 6 Cal.5th 136, 164.) Substantial evidence is that which, if believed, would

9

be sufficient for a jury to find a reasonable doubt as to defendant's guilt. (*People v. Michaels* (2002) 28 Cal.4th 486, 529; *People v. Salas* (2006) 37 Cal.4th 967, 982-983.)

We review de novo a trial court's failure to instruct on a defense. (See *People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

It is a defense to some crimes that the person who committed the crime did so as a result of a reasonable belief that doing so was necessary to save someone's life in the face of an imminent and immediate threat. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 100.)

Here, Cassell claimed at trial that he went to Bryan Bowen's house to buy drugs, and defended himself after having been attacked without cause. The only evidence of duress was his statement after being subdued that the Rollin 60's had sent him to the house. But no evidence suggested that the gang pressured him into taking a gun or threatened his or anyone else's life. Therefore no evidence supported a duress instruction, and the court properly declined to give one.

Cassell argues there was substantial evidence supporting a duress instruction, as the trial court itself must have initially believed. But he adduces no such evidence in the record, and fails to consider that by opting not to give the instruction, the court reconsidered the matter and determined also that no such evidence existed. As neither we nor apparently Cassell are aware of any evidence of duress as to gun possession, we conclude the trial court properly opted not to give the instruction.

## E. Prior Bad Acts

Cassell testified in his own defense at trial.

10

Afterward, the prosecutor indicated his intent to impeach Cassell with evidence that he committed four robberies between December 2017 and March 2018. He asked Cassell if he carjacked someone named McKay on January 2, 2018, near a donut shop; robbed someone named Dawkins on January 26, 2018, at the same donut shop; robbed someone named Mendez on January 30, 2018, nine blocks from the donut shop; and carjacked someone named Jimenez on December 20, 2017. Cassell both denied committing any of these crimes and said he had no recollection of doing so.

Los Angeles Police Sergeant Cesar Espinoza later testified that Cassell had been arrested for the December carjacking and admitted committing it, and his fingerprints were found in the car taken in the January incident. Both cases were submitted to the district attorney, who rejected them for insufficient evidence. No evidence was offered concerning the other two crimes.

The trial court instructed the jury that, if proved by a preponderance of the evidence, the jury could consider evidence of Cassell's other crimes as relevant to motive and common plan. The prosecutor did not mention the uncharged crimes in his closing argument, and in his rebuttal argument said only that they should be considered in evaluating Cassell's credibility.

Cassell argues that the court abused its discretion by allowing the prosecutor to ask Cassell about the uncharged crimes and by admitting evidence that he committed them. We disagree.

Absent a statutory exception, relevant evidence is admissible. Evidence is relevant if it has any tendency in reason to prove or disprove any disputed fact of consequence to the determination of an action. (Evid. Code, § 210.) Nevertheless,

11

relevant evidence should be excluded if the trial court, in its discretion, determines that its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice.  (Evid. Code, § 352.)  In this context, unduly prejudicial evidence is evidence that would cause the jury to "prejudge" a person on the basis of extraneous factors.  (*People v. Zapien* (1993) 4 Cal.4th 929, 958.)

Evidence of specific instances of a person's conduct is inadmissible when offered to prove his or her conduct on a specified occasion.  (Evid. Code, § 1101, subd. (a).)  But such evidence is admissible if relevant to prove some fact other than the defendant's disposition to commit a crime.  (Evid. Code, § 1101, subd. (b).)  "[E]vidence of prior bad acts always involves the risk of prejudice regardless of its probative value . . . ."  (*People v. Humiston* (1993) 20 Cal.App.4th 460, 481.)

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352."  (*People v. Clark* (2011) 52 Cal.4th 856, 931.)  "When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify."  (*Ibid*.)  If the conduct resulted in no conviction, "courts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value."  (*Id*. at p. 932.)

"[A] series of crimes may be more probative of credibility than a single crime."  (*Ibid*.)

Burglary, robbery, and car theft involve acts of moral turpitude, and are thus probative of a person's honesty.  (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.)

We review for abuse of discretion the trial court's decision to admit evidence.  (*People v. Avitia* (2005) 127 Cal.App.4th 185, 193.)  "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.)

Here, the December and January carjackings were near in time to the killing of Bryan Bowen.  The nature of the thefts was unlikely to inflame the jury, given the lack of inflammatory details, the more serious nature of the charged crimes, and the sorts of crimes alleged to have been committed by Cassell's street gang.  The evidence of uncharged crimes also tended to prove motive and common plan under Evidence Code section 1101. (*People v. Jackson* (2016) 1 Cal.5th 269, 300 [admissibility under Evidence Code section 1101 requires at least a degree of similarity to prove intent].)

Given the probative value of and minimal undue prejudice presented by the evidence of uncharged crimes, the minimal time spent discussing it, and the jury admonition, we conclude its probative value was not substantially outweighed by the risk of undue prejudice.  Accordingly, the trial court acted within its discretion in permitting the prosecutor to ask appellant about the uncharged crimes and present evidence concerning two of them.

13

Cassell argues that his acquittal on all theft-related charges means that the uncharged offenses and charged ones were dissimilar. We disagree. The question is not whether any of the offenses, charged or uncharged, were proven. The question is whether they involved similar acts. Here, the allegation that Cassell went to the Bowen house to steal from the Bowens presented a scenario similar to the uncharged offenses, where it was alleged that Cassell approached vehicle owners to steal their cars.

Cassell argues that the only inferences the jury could draw from the evidence of uncharged acts was that if he robbed or stole from four other victims, he robbed Bryan Bowen, and therefore shot him in cold blood. We disagree. Another inference is that Cassell had a tendency to be less than truthful in his testimony. Another is that he harbors plans to steal from people, common to his alleged plan to steal from Bowen.

Cassell relies on *People v. Albarran* (2007) 149 Cal.App.4th 214, which held that far-ranging gang evidence was inadmissible in a case lacking any evidence of a gang motive, and *People v. Deeney* (1983) 145 Cal.App.3d 647, which held that evidence that a husband dragged his wife, partially clothed, by her feet onto the grass in front of their duplex and then sprayed her with water was unduly inflammatory, to illustrate how the unduly prejudicial effect of evidence of uncharged crimes can substantially outweigh its probative value. We do not disagree with these cases, nor even have reason even to distinguish them. Sometimes the balance between the probative value of evidence and its unduly prejudicial effect will weigh against admission of the evidence. That such examples exist in dissimilar cases sheds no light on where the balance falls in this case.

Cassell argues that the prosecutor should not have been permitted to cross-examine him about the carjackings if the only purpose was to impeach that cross-examination testimony with evidence that he testified untruthfully, because "[a] party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted." (*People v. Lavergne* (1971) 4 Cal.3d 735, 744.) But a defendant's moral turpitude is not a collateral matter, and the prosecutor did not ask the questions merely to obtain denials.

A prosecutor may inquire into a defendant's activities which suggest moral turpitude, and in doing so may first cross-examine the defendant regarding the activities. (See *People v. Doolin* (2009) 45 Cal.4th 390, 435-437 [prosecutor permitted to ask whether defendant denied carrying a bag full of guns, and then present evidence regarding the guns]; *People v. Nunez and Satele* (2013) 57 Cal.4th 1, 27-28 [prosecutor free to explore on cross-examination whether defendant had attempted to bribe a witness, and upon denial present impeachment evidence].)

Cassell argues that cumulative error requires reversal even if no individual error does. But having found no individual errors, there is nothing to cumulate.

## F.    Sentencing

At sentencing, the probation report cited the following aggravating factors as justifying an upper term: (1) the crime involved great bodily injury or callousness; (2) the crime reflected planning; (3) Cassell had engaged in criminal behavior indicating he was a danger to society; and (4) Cassell's convictions were numerous or increasingly serious. The report summarized Cassell's criminal history: a 2013 sustained petition for marijuana possession; a 2015 sustained petition for attempted

15

robbery; a 2015 sustained petition for vehicle theft; a 2016 sustained petition for robbery; a 2016 sustained petition for grand theft. The prosecutor argued that additional factors weighed in aggravation: Cassell was armed, the victim was vulnerable, Cassell played a leadership role, and Cassell dissuaded a witness (when from jail he incited a witness not to testify).

The trial court found that Cassell was audiotaped dissuading a witness, the victim had been in his bedroom at midnight when attacked, and Cassell's behavior reflected planning. When announcing sentence, the trial court did not list aggravating factors, but referred to its prior statements and the sentencing memorandum. It imposed the upper term of 11 years for manslaughter, stating it would let the factors in aggravation speak for themselves. It also imposed the upper term of 10 years for the gun enhancement. Cassell argues the court impermissibly used the facts of gun use and great bodily injury as both enhancements and aggravating factors. We disagree.

In sentencing a defendant, the trial court "must select the upper, middle, or lower term on each count for which the defendant has been convicted[.]" (Cal. Rules of Court, rule 4.420(a).) In selecting the term, the court weighs the factors in aggravation against those in mitigation, but may not impose the upper term because of a fact also used to impose a sentence enhancement. (§ 1170, subd. (b); *People v. Scott* (1994) 9 Cal.4th 331, 350; *People v. Roberson* (1978) 81 Cal.App.3d 890; *People v. Coleman* (1989) 48 Cal.3d 112, 164-165 [court cannot rely on great bodily injury to impose both an upper term and an enhancement term].) "[A] single factor in aggravation is

16

sufficient to justify a sentencing choice." (*People v. Brown* (2000) 83 Cal.App.4th 1037, 1043.)

We review a sentencing decision for abuse of discretion, determining whether "the trial court *could have* based the aggravating factor on evidence *other* than that which gave rise to the enhancement. If so, the sentence may stand." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775; see also *People v. Jones* (2009) 178 Cal.App.4th 853, 860-861.) In other words, remand is unnecessary " 'if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." ' " (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

Here, the court had several aggravating factors justifying imposition of the upper term on the manslaughter charge, but for present purposes we need identify only one: Cassell shot the unarmed Bowen in the back in his own home at midnight, demonstrating callousness. (Cal. Rules of Court, rule 4.421(a)(1) [an aggravating factor is that the "crime involved great violence . . . or other acts disclosing a high degree of cruelty, viciousness, or callousness"].)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.          CRANDALL, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.